**ST. PAUL LLOYD'S INSURANCE COMPANY, Appellant,**

v.

**FONG CHUN HUANG, Individually and as Trustee for Teppan Yaki Management, Appellee.**

No. B14–90–080–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 28, 1991.

Robert C. Tarics, Houston, Douglas G. Houser, Portland, Or., for appellant.

Stephen J. Cavanaugh, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION ON MOTION FOR REHEARING

SEARS, Justice.

The opinion of February 21, 1991 is withdrawn and the following is substituted therefor. St. Paul Lloyd's Insurance Company appeals a fire loss case involving the Happy Buddha Restaurant. St. Paul's denied coverage under its insurance policy claiming Fong Chun Huang (appellee) was responsible for the burning of the restaurant. Fong sued St. Paul's for failure to pay on the policy and for breach of the duty of good faith and fair dealing. The trial court awarded damages to Fong for the cash value under the insurance policy and for breach of the duty of good faith and fair dealing. The trial court further reformed the insurance policy to change the named insured from Fong Chun Huang, individually, to Teppan Yaki Management, Inc., which was apparently the true owner of the restaurant.

In twelve points of error St. Paul's claims there was no evidence or insufficient evidence to show breach of the duty of good faith and fair dealing and to support the jury's finding of mutual mistake. St. Paul's further complains of the trial court's failure to limit Fong's recovery to thirty percent of the appraisal loss. Concluding there was no evidence to support the breach of the duty of good faith and fair dealing or to support the jury's finding of mutual mistake, we reverse and render judgment that Fong recover $43,500 representing his insured interest in the loss of the restaurant.

On July 10, 1985, St. Paul's insured Fong Chun Huang dba The Happy Buddha Restaurant, against certain risks of fire. Coverage was under a binder of insurance in response to an application submitted on

July 2, 1985. On July 21, 1985, the Happy Buddha Restaurant burned. After the fire, Fong made a claim against St. Paul's for insurance proceeds under the policy.

St. Paul's investigation of the fire showed the restaurant was uninsured from December 1984 to July 10, 1985. Prior to the fire, Fong asked his manager, Robert Alfaro, to obtain insurance. Fong met with his insurance agent two days before the fire to confirm insurance coverage on the building and its contents. St. Paul's investigation further showed that the restaurant had been failing financially. Joe Limn had been managing the Happy Buddha, leasing it for $6000 per month from Fong. Limn did not pay the rent on the restaurant so Fong allowed Robert Alfaro and Pedro Flores to manage the restaurant. Alfaro also failed to make monthly rent payments and failed to pay the bills from restaurant suppliers.

Roy Paul, an arson investigator in the Houston Fire Department, investigated the fire. He testified that he found evidence of rapid burning and multiple areas of origin. That was an indication that something was used to accelerate the fire, such as a flammable liquid. The building was secure at the time the fire was set, which indicated someone with a key to the building set the fire. Fong indicated that others may have had reason to intentionally torch the building. However, Paul testified that the physical facts he found in his investigation were not consistent with a vandalism fire, and stated the cause was arson for fraud. Based on its own investigation and Paul's report, St. Paul's denied Fong's claim.

In its first three points of error, St. Paul's claims there is no evidence to support the finding of breach of the duty of good faith and fair dealing. We agree and find no evidence to support the jury's finding that St. Paul's breached a duty of good faith and fair dealing in denying the claim. St. Paul's conclusively established that a reasonable insurer under similar circumstances would have denied Fong's claim.

■ An insured states a cause of action for breach of the duty of good faith and fair dealing when the insured alleges there is no *reasonable* basis for denial of a claim or delay in payment, or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). Insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of a claim. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988). A bona fide controversy is a sufficient reason for failure of an insurer to make a prompt payment of a loss claim. *National Union Fire Ins. Co. v. Hudson Energy*, 780 S.W.2d 417, 426 (Tex.App.—Texarkana 1989, writ denied). Also, the insurer need only show that it had a *reasonable basis for believing* the insured was at fault in order to defend a bad faith allegation. *Plattenburg v. Allstate Ins. Co.*, 918 F.2d 562 (5th Cir.1990).

■ In this case, St. Paul's presented a reasonable fact question as to whether the fire was set by Fong or someone paid by Fong to set the fire. Prior to trial, both parties stipulated that the fire was caused by arson. The property was uninsured for seven months before the fire. The fire occurred eleven days after coverage commenced and two days after Fong was advised that the policy was in place. The restaurant was failing financially and was closed five days before the fire, presumably for remodeling, but no contractor had been retained. The arson investigator testified the fire had multiple origins, that an accelerant had probably been used, and the building was secure when the firefighters arrived. Fong produced no controverting evidence. Fong's primary allegation of bad faith was that St. Paul's had not diligently sought the identity of the person who set the fire. The record establishes that St. Paul had a reasonable basis for denying the claim. We find no evidence that St. Paul's breached its duty of good faith and fair dealing. St. Paul's first three points of error are sustained.

In its sixth and seventh points of error St. Paul's claims the evidence was legally and factually insufficient to support the

jury's finding of mutual mistake. When Fong applied for insurance on the Happy Buddha restaurant, he represented to St. Paul's that he was the owner of the restaurant. The policy was issued in Fong's name, doing business as the Happy Buddha restaurant. Teppan Yaki Management, however, owned the Happy Buddha. Fong is a thirty percent shareholder in Teppan Yaki Management. The jury found a mutual mistake and the trial court reformed the insurance policy to reflect Teppan Yaki Management as the insured.

The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex.1987). Reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing. *Sun Oil Co. v. Bennett*, 84 S.W.2d 447, 451 (Tex.1935).

The law presumes a written agreement correctly embodies the parties' intentions, and is an accurate expression of the agreement the parties reached in prior oral negotiations. *Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273, 275 (Tex. 1970). While it is true that parol evidence is admissible to show that the writing, because of a mutual mistake, incorrectly reflects the true agreement, and the equitable remedy of reformation is available to correct such a mutual mistake in the written instrument, reformation is unavailable unless the party claiming mistake presents "clear, exact, and satisfactory evidence." *Sun Oil Co. v. Bennett*, 84 S.W.2d at 452. A mistake by only one party to an agreement, not known to or induced by acts of the other party, is not grounds for finding a mutual mistake. *See Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1973).

We find no evidence of a mutual mistake. The record supports a finding of a unilateral mistake on Fong's part. The application submitted to St. Paul's, and the insurance policy, listed the insured as "Fong Chun Huang, an individual, dba The Happy Buddha." Fong did not inform Don Landers, St. Paul's agent, that Teppan Yaki Management owned the Happy Buddha. Fong, in his brief, admits that he made a mistake in not telling Landers that Teppan Yaki Management owned the Happy Buddha. There is no evidence that Fong and Landers intended to name Teppan Yaki Management as the insured. Therefore, there can be no mutual mistake and the reformation of the insurance policy was error. St. Paul's sixth and seventh points of error are sustained.

Because reformation is improper, Fong can only recover his insurable interest: thirty percent of the loss. A fire insurance policy is a personal contract between the insurer and the insured named in the policy, and a stranger to the policy may not ordinarily maintain a suit on it. *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 632 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). It is undisputed that Fong owned only thirty percent of the stock in Teppan Yaki Management. The actual cash value loss to the building was $90,000 and the loss to the contents was $55,000. Those figures were determined by Judge Charles Price who served as the umpire in an appraisal proceeding held under the terms of the policy. Therefore, Fong's recovery is limited to thirty percent of $145,000, which is $43,500. St. Paul's eighth and ninth points of error are sustained.

Our disposition of St. Paul's first through third, and sixth through ninth points of error pretermits a discussion of its remaining points.

Fong brings five cross-points of error complaining of the trial court's failure to award damages on his slander claim, the exclusion of certain evidence, and the measure of damages used to determine Fong's recovery under the insurance policy.

In his first three cross-points Fong claims the trial court erred in failing to award damages under his slander cause of action. In response to the court's charge, the jury found that a representative of St.

Paul's made slanderous statements about Fong. The jury found, however, that Fong suffered no actual damages from the slander. They further found $250,000 in exemplary damages. Fong now claims the trial court erred in disregarding the jury's finding of slander and exemplary damages.

Fong rests his argument on the proposition that, in slander per se cases, damages are presumed by law, and are conclusive as a matter of law. Fong claims the "great majority of jurisdictions have reached the conclusion that if there is defamation per se, exemplary damages may be awarded even though actual damages are neither found nor shown." Fong cites us to *Doubleday & Company, Inc. v. Rogers,* 674 S.W.2d 751 (Tex.1984). That case expressly rejects Fong's claim. In *Doubleday,* the supreme court reaffirmed the rule that punitive damages are not recoverable in the absence of actual damages. *Id.* at 754. Therefore, without a finding of actual damages, Fong cannot recover punitive damages for slander.

Fong further claims that he proved actual damages as a matter of law or that the finding of no actual damages is against the great weight and preponderance of the evidence. The evidence Fong directs us to in his brief and his motion for rehearing belies that conclusion. Fong testified that he was embarrassed by Daniel Stamps's statement that he would be arrested for arson. Fong testified that patrons of the Memorial Park bar would talk about him setting the fire, and that made him feel bad. Mrs. Fong testified that she got "very angry" if someone suggested that Fong paid someone to set the fire. Roy Wu testified that this case "bothered" Fong and that he gets angry very easily when discussing the case. We do not find this evidence establishes actual damages on Fong's slander claim as a matter of law. We hold the jury's answer of "$0" is not against the great weight and preponderance of the evidence. Fong's first three cross-points of error are overruled.

In his fourth cross-point of error Fong claims the trial court erred in refusing to admit his evidence of St. Paul's net worth.

Fong offered a financial statement of St. Paul's, which the trial court excluded. Because we have reversed the trial court's award of actual and punitive damages for breach of the duty of good faith and fair dealing, the financial statement of St. Paul's is immaterial. Therefore, we find no reversible error in the exclusion of the financial statement. Fong's fourth cross-point of error is overruled.

In his fifth cross-point of error Fong claims the trial court erred in entering judgment that he recover only $140,000 because he was entitled to recover repair or replacement value under the terms of the policy. The insurance policy provides the measure of damages is the actual cash value of the property, not exceeding the amount that it would cost to repair or replace the property. The question of the amount of damages was submitted to appraisal by the parties as provided in the contract. The umpire found the actual cash value loss to the structure was $90,-000 and loss to contents and personal property was $55,000.

Where the insurance contract provides the measure of damages is the actual cash value of the damaged or destroyed property, it is equivalent to a market value measure of damages. *United States Fire Ins. Co. v. Stricklin,* 556 S.W.2d 575, 582 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). The umpire's findings were based on market value. The trial court correctly awarded damages based on the umpire's findings. Fong's fifth cross-point of error is overruled.

We reverse the trial court's judgment and render judgment that Fong recover a total of $43,500.